UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JASON D., | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:18-cv-00371-DBH |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the December 21, 2017 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has the following severe, but non-listing-level impairments: cervical degenerative disc disease; right knee chondromalacia of the patellofemoral joint, effusion, and baker's cyst; obesity; social anxiety; post-traumatic stress disorder; attention deficit hyperactivity disorder; depression; and insomnia. (R. 12, ¶ 3.) The ALJ concluded that as the result of his impairments, Plaintiff has a residual functional capacity (RFC) to perform work involving light exertion, frequent public interaction (not constant), frequent interaction with coworkers, independent work with only occasional instruction (meaning a position where Plaintiff's interaction with supervisors is no more than occasional), with no "tandem tasks." (R. 15, ¶ 5.) Given the RFC, Plaintiff's age and vocational background, and after consideration of the testimony of a vocational expert, the ALJ determined that Plaintiff is not disabled because Plaintiff is able to perform substantial gainful activity consisting of jobs that exist in the national economy in significant numbers, including representative jobs of price marker, housekeeper, and laundry classifier. (R. 22-23, ¶¶ 7-11.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind

might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff argues the ALJ's RFC finding is not reasonably supported by the medical expert opinion evidence and that the ALJ impermissibly judged matters entrusted to experts. Plaintiff also contends the ALJ did not adequately address the limiting effect of Plaintiff's severe obesity.

**A. Plaintiff's Physical RFC**

Plaintiff's severe physical impairments consist of cervical degenerative disc disease, impairment of the right knee, and BMI 39.9 obesity. The ALJ gave only partial weight to the opinions of the Disability Determination Services consulting physicians (Exs. 1A, R. 115-16; 2A, R. 129-30; 5A, 6A), who assessed a capacity for medium exertion with some occasional postural limitations. The consultants noted that Plaintiff's physical impairment involved head and neck pain. (R. 111, 125, 143.)

In connection with his request for reconsideration of the initial denial, Plaintiff informed Defendant of his increasing bilateral knee pain. (R. 160.) The reconsideration consultant (Jose Rabelo, M.D.) noted the alleged physical impairment was head and neck pain, that there was no change since the last report, but also suggested new bilateral knee pain. (R. 164.) The medical records, however, include a December 2015 report of right

3

knee pain coupled with a body mass index of 38.77.  Additionally, the reconsideration record notes a right knee x-ray suggestive of medial tibiofemoral compartment degenerative change and possible joint effusion. (R. 166.)  The reconsideration record further reflects that the physical RFC of "Medium eroded to LIGHT by Stooping and Crouching limited to occasionally" was affirmed.[2]  (R. 169.)

As part of their assessment, the reviewing consultants considered the February 2016 consultative examination report of Robert Phelps, Jr., M.D.  (Ex. 7F.)  Dr. Phelps assessed Plaintiff's report of right knee symptoms in addition to his preexisting impairments. (R. 636.)  He observed that Plaintiff's mobility was "good within confines of the office," and that Plaintiff did not use an assistive device for ambulation, was able to squat and arise from the squatting position, had 5/5 strength of knees with pain on the right and good motion with no joint instability or swelling, no tenderness to palpation, pain with pressure against right patella, and patella-femoral joint compression very painful.  (R. 639.)  Dr. Phelps provided a source statement that Plaintiff's ability to stand or walk was good, and that a cane could be helpful when the knee is symptomatic.  (R. 640.)

The ALJ gave "significant weight" to Dr. Phelps' source statement, though she described it as somewhat vague.  In her view, the assessment of a "good" ability to stand and walk suggested light exertion more than medium.  (R. 18.)  The ALJ gave "partial weight" to the opinions of the consulting reviewers.  As with Dr. Phelps' opinion, the ALJ

---

[2] Consistent with this finding, as part of his report, Dr. Rabelo noted that Plaintiff climbed six flights of stairs because he does not like elevators and demonstrated normal gait without need of an assistive device. (R. 169.)

4

disagreed that Plaintiff could engage in full-time medium exertion. She also disagreed with the consultants' suggestion of postural limitations because she saw no basis for such a limitation in Dr. Phelps' source statement or in the medical record generally.[3] (*Id.*)

In part citing an MRI dated July 13, 2016, which revealed mild patellofemoral osteoarthropathy/chondromalacia, small effusion, and Baker's cyst, Plaintiff argues the ALJ's physical RFC finding is not supported by substantial evidence. (Statement of Errors 15-16; Ex. 13F, R. 720.) In support of his contention, Plaintiff cites more recent radiographic evidence and contends the ALJ was not permitted to omit postural limitations (occasional climbing, stooping, crouching, kneeling, and crawling) found by the consulting reviewers, or the restriction on right lower extremity ability to push or pull suggested by Dr. Phelps. (Statement of Errors at 15-16.)

Plaintiff's argument is unconvincing. First, the MRI evidence suggests only a mild impairment. Furthermore, the ALJ's finding of light exertion acknowledges the possibility that Plaintiff would be unsuccessful in a job that required him to ambulate while carrying relatively weighty objects (up to 50 pounds). As for the ALJ's omission of postural restrictions, Plaintiff has not demonstrated that the ability to assume any particular posture on a more than occasional basis would be necessary to perform the jobs on which the ALJ's step 5 finding is based.

Plaintiff's also argues the physical RFC finding is flawed because the ALJ did not

---

[3] Dr. Phelps found that Plaintiff's "ability to climb, kneel, crouch and crawl is intermittently limited." (R. 640.) Dr. Rabelo found Plaintiff could only occasionally crouch, stoop, and climb ladders, ropes and scaffolds. (R. 152.)

5

sufficiently discuss the impact of obesity on Plaintiff's ability to perform physical work activity. (Statement of Errors at 15-17.) The ALJ did not disregard Plaintiff's obesity. Instead, she observed:

> In terms of the claimant's obesity, neither the obesity on its own, nor in conjunction with his other severe impairments, supports the extent of the claimant's alleged limitations based on the objective medical evidence. At the time of the hearing the claimant weighed approximately 270 pounds, representing a body mass index (BMI) of 39.9. While obesity may have contributed to the claimant's limitations and potentially aggravated other impairments, those limitations are adequately reflected in the residual functional capacity assessment. Moreover, there is no evidence on this record to show that obesity affects the claimant in a manner that precludes work activities altogether.

(R. 17.) According to Plaintiff, the "[l]ack of evidence that obesity precludes work activities all together does not alleviate the ALJ's responsibility to evaluate and identify the functional limitations resulting from the impact of obesity." (Statement of Errors at 16.)

Defendant's administrative rulings include a commitment to evaluating the limiting impact that obesity has on social security claimants. See SSR 02–1p, Titles II and XVI: Evaluation of Obesity, 2000 WL 628049 (Sept. 12, 2002). The Ruling recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." 2000 WL 628049, at *3. The Ruling provides that obesity will be considered in connection with the sequential evaluation process at step 2 and step 3, and also as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity in connection with step

4 and step 5. *Id*. The standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02–1p, 2000 WL 628049, at *6. Consideration of obesity is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any physical or mental limitations." *Id*. at *7.

The ALJ's discussion of the limiting impact of obesity was sufficient. The ALJ identified obesity as a factor in Plaintiff's limitations and explained that the RFC accommodates obesity's impact. The ALJ's assessment was also consistent with the conclusions and approach of the experts. Obesity was identified as a concern in the context of Dr. Rabelo's reconsideration review (R. 159, 168) and Dr. Phelps specifically identified "morbid obesity (according to Body Mass Index charts)" as a factor that informed his medical source statement. (R. 639.) None of the expert witnesses opined that obesity resulted in a specific functional limitation. In short, neither the record nor the law requires more from the ALJ.

### B. Plaintiff's Mental RFC

The ALJ found that Plaintiff's mental impairments consist of social anxiety, post-traumatic stress disorder, attention deficit hyperactivity disorder, and depression; she also determined that Plaintiff's mental impairments limit his ability to interact with others in the work setting. (R. 12.) Specifically, the ALJ found Plaintiff cannot be in a position that requires him to interact with the public or coworkers on a constant basis, and that he needs

to work independently with only occasional instruction/supervision and no tandem tasks. (R. 15.) Plaintiff argues the mental RFC finding is not supported by substantial evidence. (Statement of Errors at 1-13.)

In a September 5, 2017, report, John William Hunter, LCPC, LADC, a provider, opined that Plaintiff is "extremely limited," suggesting Plaintiff is unable to maintain attention for two hours, work with others, make simple work decisions, perform without an unreasonable number and length of rest periods, or get along with others. In addition, Mr. Hunter assessed marked limitation (a substantial loss) in Plaintiff's ability to attend, be punctual and deal with normal stress. (Ex. 21F, R. 886-87.) Mr. Hunter concluded that Plaintiff would miss on average three days of work per month due to his symptoms; he described the chief concern as "clinically significant panic." (R. 887-88.)

The ALJ gave Mr. Hunter's opinions "limited" weight. In the ALJ's view, the "overall weight of the evidence of record" demonstrated that Plaintiff's symptoms improved with counseling, that Plaintiff was able to care for himself and family members, that he is highly intelligent, and that providers "consistently observe him to be normal." (R. 21.)

The ALJ gave "partial" weight to the opinions of the reviewing consultants, who assessed the medical evidence of record in February 2016 (initial review) and September 2016 (reconsideration review). Lewis Lester, Ph.D., the initial reviewing consultant, observed that the "[e]vidence documents reported symptoms of anxiety, in a historical setting notable for poly-substance abuse/dependence (now in reported long-term remission) and accompanying psycho-social dysfunction, with current co-morbid alleged

physical problems." (Ex. 1A, R. 113.) Dr. Lester considered Plaintiff's report of his impairment to consist of "highly formulaic statements" that were "not supported by any objective data and [were] inconsistent with claimant's mental status exams and [activities of daily living]." (R. 114.) Dr. Lester noted that Plaintiff's activities of daily living "appear to be entirely unimpaired except with respect to his alleged social anxiety, which does not preclude his capacity to carry out tasks within the scope of the [mental residual functional capacity]." (*Id.*) Dr. Lester assessed a mental RFC for "moderately detailed tasks and procedures" given a "fully intact cognitive mental status," but not for complex or highly detailed tasks due to anxiety and report of chronic pain; an ability to be reliable and sustain work activity in two-hour blocks without interruption from mental symptoms; no interaction with the public, but no limit with respect to coworkers and supervisors in a "normal setting." (R. 116-18.) At the reconsideration stage, Plaintiff reported no change in mental conditions. (Ex. 6A, R. 160, 168, 170.) Annette De Paz-Ortiz, Psy.D., affirmed the prior assessment following her review of the evidence on file. (R. 171-72, 176.)

The mental RFC opinions of Drs. De Paz-Ortiz and Lester constitute substantial evidence to support the ALJ's mental RFC finding. Dr. Lester's assessment of the lack of reliability of Plaintiff's reports of limitations and Dr. Lester's overall assessment of Plaintiff's limitations are sufficient to refute Plaintiff's claim of error. Furthermore, because the vocational expert identified jobs that are "simple" in nature, the discrepancy between the consulting experts' view that Plaintiff is capable of moderately detailed work and the ALJ's finding that Plaintiff is not limited intellectually is immaterial.

Finally, even if the ALJ erred when she found Plaintiff capable of frequent public

interaction, any such error is harmless because two of the jobs identified at step 5 (price marker and laundry classifier) are not defined to require public interaction, and the vocational expert testified that the jobs would still be available for a worker unable to interact with the public. (Hr'g Tr., R. 104; Response at 5.)[4]

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of April, 2019.

---

[4] According to the Dictionary of Occupational Titles the jobs involve, in relation to "people," "taking instructions-helping," and the burden is "not significant." Dictionary of Occupational Titles §§ 209.587-034 & 361.687-014. The job definitions do not otherwise suggest involvement with the public. Precedent in this District holds that omission of a preclusion against public interaction is harmless when the record demonstrates the existence of a significant number of jobs of this kind. *Gleason v. Colvin*, No. 1:15-cv-12-NT, 2015 WL 7013661, at *5 (Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7012739 (D. Me. Nov. 12, 2015) (citing *Connor v. Colvin*, No. 1:13–cv–00219–JAW, 2014 WL 3533466, at *4 (D. Me. July 16, 2014), and *Hewes v. Astrue*, No. 1:10–cv–513–JAW, 2011 WL 4501050, at *8 (D. Me. Sept. 27, 2011)). In this case, the vocational expert testified there are approximately 120,000 such jobs nationally.